1
2
3
4
5
6                    **IN THE UNITED STATES DISTRICT COURT**
7                       **FOR THE DISTRICT OF ARIZONA**
8
9    Marvin Arido-Sorro,                    No. CV-23-00842-PHX-JAT (ESW)
10                       Petitioner,         **REPORT AND**
                                             **RECOMMENDATION**
11   v.
12   Merrick B. Garland, et al.,
13                       Respondents.
14
15
16   **TO THE HONORABLE JAMES A. TEILBORG, SENIOR UNITED STATES**
17   **DISTRICT JUDGE:**
18          Pending before the Court is Marvin Arido-Sorro's ("Petitioner") Petition for Writ
19   of Habeas Corpus (the "Petition") (Doc. 1) filed pursuant to 28 U.S.C. § 2241. Petitioner,
20   a citizen of the Central African Republic, has been detained by Immigration and Customs
21   Enforcement ("ICE") for since December 15, 2021.  After reviewing the parties' briefing
22   (Docs. 1, 24, 27-29, 33), the undersigned recommends that the Court order Respondents to
23   provide Petitioner with an individualized bond hearing before an immigration judge. It is
24   also recommended that the Court order that Respondents shall bear the burden of proving
25   at the hearing, by clear and convincing evidence, that Petitioner is a flight risk or a danger
26   to the community.
27                               **I.  BACKGROUND**
28          On March 13, 2013, Petitioner was admitted to the United States as a refugee. (Doc.

24-1 at 2). In June 2013, the Tucson Police Department arrested Petitioner for disorderly conduct and obstruction for refusing to provide his true name to law enforcement. (*Id.* at 3). The arrest led to a conviction on the disorderly conduct charge and Petitioner was sentenced to two days of incarceration and nine months of probation. (*Id.*). On October 13, 2016, Petitioner was convicted in the Superior Court of Arizona, Pima County of (i) assault; (ii) aggravated assault—domestic violence with temporary but substantial disfigurement, and (iii) two counts of aggravated assault domestic violence with a deadly weapon or dangerous instrument. (*Id.*). Petitioner was sentenced to a total of seven and a half years in prison. (*Id.*; Doc. 28-1 at 3). On July 3, 2017, Petitioner was convicted of aggravated harassment in violation of an order of protection and sentenced to one and a half years of incarceration. (Doc. 24-1 at 3).

On January 25, 2018, the Department of Homeland Security ("DHS") issued a Notice to Appear charging Petitioner as removable under section 237(a)(2)(E)(ii) of the Immigration and Nationality Act ("INA") for violating a protection order. (*Id.* at 4, 8-10). On September 19, 2018, DHS lodged an additional charge of removability under INA § 237(a)(2)(A)(i) for having been convicted of a crime involving moral turpitude within five years of admission for which a sentence of at least one year may be imposed. (*Id.* at 4, 12-13).

On July 31, 2019, an immigration judge ordered Petitioner removed to the Central African Republic. (*Id.* at 4, 15-24). Petitioner appealed to the Board of Immigration Appeals ("BIA"). (*Id.* at 4). Petitioner then filed an unopposed motion to remand the case to allow United States Citizenship and Immigration Services ("USCIS") to consider his application for adjustment of status. (*Id.* at 5). On December 23, 2019, the BIA granted the motion and remanded the case, but did not reverse the removal order. (*Id.* at 5, 26).

On December 15, 2021, upon completion of his criminal sentences, Petitioner was transferred from the custody of the Arizona Department of Corrections to the custody of ICE. (*Id.* at 5). On December 24, 2021, Petitioner filed an application (Form I-485) to adjust his status to that of a Lawful Permanent Resident. (*Id.* at 5, 38). Petitioner

concurrently filed an application (Form I-602) for waiver of inadmissibility grounds. (Doc. 28-1 at 2).

On February 9, 2024, Respondents filed a Notice (Doc. 28) indicating that on January 22, 2024, USCIS served a Notice of Intent to Deny in relation to Petitioner's Form I-485 and Form I-602 applications. (Doc. 28). The Notice states that Petitioner has 30 days (33 if the Notice was received by mail) to submit additional information, evidence, or arguments to support his applications. (Doc. 28-1 at 9). On March 13, 2024, Petitioner filed in this Court a "Notice Regarding Status Update" (Doc. 29) that explains that "new[] evidence was sen[t] in 02/27/2027." Attached to the Notice is an "Affidavit of Hardship" addressed to the Immigration Court that is dated February 17, 2024. (Doc. 29-1 at 16-22).

In his Petition (Doc. 1), Petitioner argues that his prolonged detention violates his statutory and constitutional rights and he seeks immediate release from custody. Respondents filed their Answer (Doc. 24) on January 8, 2024. On February 8, 2024, Petitioner filed a Reply (Doc. 27). Petitioner subsequently filed a "Notice Regarding Status Update and/or Supplemental New Evidence/Information" (Doc. 29).

On June 7, 2024, the Court ordered Respondents to file a supplemental brief addressing: (i) Respondents' position concerning the appropriate legal test for determining whether Petitioner's detention has become unconstitutionally prolonged; (ii) application of the relevant test to the specific facts of Petitioner's case; and (iii) the appropriate remedy if the Court finds a due process violation. (Doc. 30).[1] On July 8, 2024, Respondents submitted their Supplemental Briefing (Doc. 33). The Supplemental Briefing indicates that USCIS denied Petitioner's Form I-485 and Form I-602 applications on March 26, 2024. (*Id.* at 2). USCIS scheduled a hearing before an immigration judge for July 25, 2024 to

---

[1] The Court's Order (Doc. 30) provided that Petitioner may file a supplemental reply within thirty days after service of the supplemental brief. Petitioner did not file a supplemental reply.

consider Petitioner's applications for relief from removal.[2] (*Id.* at 2-3). Respondents state that Petitioner is being detained pursuant to 8 U.S.C. § 1226(c). (*Id.* at 4).

## II. LEGAL STANDARDS

Section 2241 authorizes courts to adjudicate a writ of habeas corpus when a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

The Immigration and Nationality Act ("INA") establishes procedures for removing noncitizens living unlawfully in the United States as well as for determining whether such persons are to be detained during removal proceedings. *Johnson v. Guzman-Chavez*, 594 U.S. 523, 527 (2021). As the Ninth Circuit recounted in *Avilez v. Garland*, 69 F.4th 525, 529 (9th Cir. 2023), four statutes grant the United States authority to detain aliens who have been placed in removal proceedings: 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), and 1231(a). An alien's place "within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008).

8 U.S.C. § 1231(a) "governs the detention, release, and removal of individuals 'ordered removed.'" *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022). Section 1231(a)(1)(A) provides that, following entry of a final order of removal, the United States generally must effectuate the alien's removal during a 90-day "removal period." For aliens who are detained or confined for criminal offenses, the 90-day period begins to run on "the date the alien is released from [non-immigration] detention or confinement." 8 U.S.C. § 1231(a)(1)(B)(iii). Detention is mandatory during this first 90 days. *Id.* § 1231(a)(2) ("During the removal period, the Attorney General shall detain the alien.").

Following expiration of the 90-day removal period, certain aliens "may" be detained

---

[2] By separate Order, the Court directed Respondents to file a status report every sixty days that informs the Court of the status of Petitioner's removal proceedings.

1    if they fall into one of four distinct categories: "(1) those who are 'inadmissible' on certain
2    specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those
3    [determined] 'to be a risk to the community'; and (4) those [determined] to be 'unlikely to
4    comply with the order of removal.'" *Arteaga-Martinez*, 596 U.S. at 578-79 (quoting 8
5    U.S.C. § 1231(a)(6)).

6    "It is well established that the Fifth Amendment entitles aliens to due process of law
7    in deportation proceedings." *Demore v. Kim*, 538 U.S. 510, 523 (2003) (internal quotation
8    marks and citation omitted).  This protection applies to "all 'persons' within the United
9    States, including aliens, whether their presence here is lawful, unlawful, temporary, or
10   permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "Freedom from
11   imprisonment—from government custody, detention, or other forms of physical restraint—
12   lies at the heart of the liberty" that the Due Process Clause protects. *Id.* at 690. Under these
13   due process principles, civil immigration detention is constitutional only in "certain special
14   and narrow nonpunitive circumstances," and it must "bear a reasonable relation to the
15   purpose" for which the individual was detained. *Id.* (citations, brackets, and quotation
16   marks omitted).

## III.  DISCUSSION

### A.  Balancing Test to Determine whether Prolonged Detention under 8 U.S.C. § 1226(c) without a Bond Hearing Violates Due Process

20   As explained in Respondents' Supplemental Briefing (Doc. 33 at 4), Petitioner is
21   currently being detained pursuant to 8 U.S.C. § 1226(c) pending a final determination of
22   his applications for relief from removal.  In *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018),
23   the Supreme Court rejected the Ninth Circuit Court of Appeal's interpretation of an implicit
24   statutory time limit on detention under 8 U.S.C. § 1226(c).  The Supreme Court, however,
25   remanded the matter to the Ninth Circuit for consideration of whether prolonged detention
26   under § 1226(c) may violate constitutional due process. Since *Jennings*, district courts in
27   the Ninth Circuit have addressed the question of what framework to apply in assessing
28   whether an individual's prolonged mandatory detention under § 1226(c) violates due

process.

In their Supplemental Briefing, Respondents discuss the approach adopted in *Lopez v. Garland*, 631 F. Supp. 3d 870 (E.D. Cal. 2022).  (Doc. 33 at 6).  After surveying the various tests employed by district courts post-*Jennings*, the *Lopez* court adopted a balancing test that considers the following three factors: (i) the total length of detention to date; (ii) the likely duration of future detention; and (iii) the delays in the removal proceedings caused by the petitioner and the government.  *Id.* at 879.

The undersigned is persuaded that the *Lopez* factors provide an appropriate framework for the due process analysis in this case.  The undersigned agrees with the *Lopez* court that certain factors included in other tests, such as conditions of confinement and the nature of the underlying criminal offenses, are not particularly probative of whether prolonged mandatory detention itself has become unreasonable.  *Id.* at 878.  Accordingly, the undersigned will assess whether Petitioner's continued detention without a bond hearing violates due process by examining the three factors set forth in *Lopez*.

### B. Application of *Lopez* Factors

#### 1. Total Length of Detention to Date

The first *Lopez* factor considers the total length of a petitioner's detention to date. Here, Petitioner has been detained by ICE since December 15, 2021.  (Doc. 24-1 at 5).  As the *Lopez* court recognized, "[i]n general, as detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing." 631 F. Supp. 3d at 880 (internal quotation marks and citation omitted).  Several district courts have held that detention under § 1226(c) for periods shorter than a year, without an individualized bond hearing, violates due process. *See, e.g.*, *Perera v. Jennings*, No. 21-cv-04136-BLF, 2021 WL 2400981 (N.D. Cal. June 11, 2021) (ordering government to hold a bond hearing for a petitioner who had been detained pursuant to § 1226(c) for two months); *Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *1, 11 (S.D.N.Y. May 23, 2018) (finding continued detention of petitioner pursuant to § 1226(c) without a bond hearing unconstitutional where petitioner was detained more than eight months).

Petitioner has been detained for nearly three years as of the date of this Report and Recommendation.  The undersigned finds that the first *Lopez* factor weighs in favor of Petitioner. *See, e.g.*, *Yagao v. Figueroa*, No. 17-CV-2224-AJB-MDD, 2019 WL 1429582, at *1 (S.D. Cal. Mar. 29, 2019) (ordering a bond hearing where § 1226(c) detainee "has gone nearly two years without a bond hearing"); *Lopez*, 631 F. Supp. 3d at 880 (finding first factor weighed in favor of the petitioner who had been detained pursuant to § 1226(c) for one year).

### 2. Likely Duration of Future Detention

The second *Lopez* factor considers the likely duration of future detention. Based on Respondents' Supplemental Briefing, Petitioner's removal proceedings are ongoing.  A hearing on Petitioner's applications was scheduled for July 25, 2024.  (Doc. 33-1 at 2). However, Petitioner may seek to appeal an unfavorable ruling to the BIA.  If the BIA affirms the unfavorable ruling against him, Petitioner could then petition review by the Ninth Circuit Court of Appeals.

Courts have recognized that the possibility of prolonged appeals weighs in favor of finding that continued detention without a bond hearing violates due process. *See, e.g.*, *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1108 (W.D. Wash. 2019) (finding that appeal of removal order with the BIA and review in the Ninth Circuit "may take up to two years or longer" and favors granting petitioner a bond hearing); *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 212 (3d Cir. 2020) (finding that appeal of cancellation of removal order with the BIA "could take months" and potential review in the Third Circuit "would add months more in prison" such that "the likelihood that [petitioner's] detention will continue strongly supports a finding of unreasonableness"); *Lopez*, 631 F. Supp. 3d at 881 (finding that "administrative appeals and possible judicial review by the Ninth Circuit will be sufficiently lengthy such that [the second] factor weighs in favor" of the petitioner).

Given the uncertainty surrounding the duration of Petitioner's future detention and the potential for a lengthy appeals process, the undersigned finds that the second *Lopez*

factor weighs in favor of Petitioner.

### 3. Delays in Removal Proceedings

The third *Lopez* factor examines the causes of delay in the removal proceedings, distinguishing between delays attributable to the petitioner and those caused by the government. The record in this matter suggests that both parties have contributed to the prolonged nature of the removal proceedings. In his Declaration, a DHS Deputy Field Office Director states that Petitioner's case has been continued sixteen times. (Doc. 24-1 at ¶ 32). Twelve of those continuances were requested by Petitioner and four are attributable to the Government. (*Id.*; Doc. 33 at 6-7).

Although Petitioner is responsible for some of the delay in his removal proceedings, the undersigned does not find that the submitted record establishes that those delays were attributable to dilatory tactics. Petitioner has pursued numerous forms of relief, including adjustment of status, asylum, withholding of removal, and deferral under the Convention Against Torture. (Doc. 1 at 20). A noncitizen "is entitled to raise legitimate defenses to removal" and "such challenges to his removal cannot undermine his claim that detention has become unreasonable*." Liban M.J. v. Sec'y of Dep't of Homeland Sec.*, 367 F. Supp. 3d 959, 965 (D. Minn. 2019). The undersigned finds that the third *Lopez* factor is neutral.

### C. The *Lopez* Factors Weigh in Favor of Petitioner

Balancing the *Lopez* factors, the undersigned concludes that Petitioner's continued detention without an individualized bond hearing violates due process. Immediate release is not warranted. *See Lopez*, 631 F. Supp. 3d at 882 ("[T]he Court finds, consistent with other post-*Jennings* cases, that the appropriate remedy is a bond hearing before an immigration judge rather than immediate release."). The undersigned will now address the issue of which party bears the burden of proof at the bond hearing.

Citing the dissent in *Jennings*, Respondents argue that if the Court orders a hearing, Petitioner should bear the burden of proof. (Doc. 33 at 8). The dissent in *Jennings* reasoned that "[p]roceedings should take place in accordance with customary rules of procedure and burdens of proof rather than the special rules that the Ninth Circuit imposed." 138 S. Ct. at

882 (Breyer, J., dissenting). However, the majority opinion in *Jennings* did not address the burden of proof question. Instead, the Supreme Court remanded the case to the Ninth Circuit Court of Appeals to resolve the constitutional questions in the first instance. *Id.* at 851. As noted in *Lopez*, the Ninth Circuit's decision in *Martinez v. Clark*, 36 F.4th 1219 (9th Cir. 2022) offers relevant guidance as to the burden of proof at a § 1226(c) bond hearing. *Lopez*, 631 F. Supp. 3d at 883 n.9.

In *Martinez*, although the Ninth Circuit took "no position" on whether due process requires a bond hearing under § 1226(c), it did address "the scope of federal court review of those bond determinations" when a hearing had been provided. *Id.* at 1223. The Ninth Circuit in *Martinez* explained that "the BIA properly noted that the government bore the burden to establish by clear and convincing evidence that Martinez is a danger to the community." *Id.* at 1231.

Relying on *Martinez*, the *Lopez* court concluded that the government must prove, by clear and convincing evidence, that the § 1226(c) detainee is a flight risk or a danger to the community to justify denial of bond. *Lopez*, 631 F. Supp. 3d at 884 n.9 (collecting cases). The undersigned finds that placing the burden on the government is consistent with the Ninth Circuit's reasoning in *Martinez* and the persuasive analysis of numerous district courts to consider the issue post-*Jennings*. *See, e.g.*, *Jimenez v. Wolf*, No. 19-CV-07996-NC, 2020 WL 510347, at *4 (N.D. Cal. Jan. 30, 2020) (noting that *Jennings* did "not discuss burdens or standards of proof" and ordering the government to provide § 1226(c) detainee with a bond hearing at which the government must justify the continued detention by clear and convincing evidence); *Cortez v. Sessions*, 318 F. Supp. 3d 1134, 1146–47 (N.D. Cal. 2018) ("The [*Jennings*] Court did not engage in any discussion of the specific evidentiary standard applicable to bond hearings, and there is no indication that the Court was reversing the Ninth Circuit as to that particular issue."); *Portillo v. Hott*, 322 F. Supp. 3d 698, 709 (E.D. Va. 2018) (holding that the government must demonstrate by clear and convincing evidence that the § 1226(c) detainee poses a risk of flight or a danger to the community"); *Obando-Segura v. Whitaker*, No. GLR-17-3190, 2019 WL 423412, at *4

(D. Md. Feb. 1, 2019) (requiring government to bear the burden of proof at § 1226(c) detainee's bond hearing); *Duncan v. Kavanagh*, 439 F. Supp. 3d 576, 590-91 (D. Md. 2020) (holding the government must prove by clear and convincing evidence that the detainee poses a flight risk or would be a danger to the community if released); *Yagao*, 2019 WL 1429582, at *4 (finding that prolonged detention under § 1226(c) without a bond hearing violated due process and ordering that the government bear the burden of proof by clear and convincing evidence at the bond hearing).

The undersigned will recommend that the Court (i) order Respondents to provide Petitioner with an individualized bond hearing and (ii) require Respondents to bear the burden of proof at the hearing by showing by clear and convincing evidence that Petitioner is a flight risk or a danger to the community.

## IV. CONCLUSION

Based on the foregoing,

**IT IS RECOMMENDED** that the Court grant in part and deny in part the Petition (Doc. 1) as follows:  It is recommended that the Court deny Petitioner's request for immediate removal from immigration detention. However, it is recommended that the Court order Respondents to provide Petitioner with an individualized bond hearing before an immigration judge.

**IT IS FURTHER RECOMMENDED** that the Court order Respondents to set Petitioner's bond hearing within **thirty days** from the date of any order adopting the above recommendation.  It is further recommended that the Court order that Respondents must establish at that hearing by clear and convincing evidence that Petitioner is a flight risk or a danger to the community in order to continue his detention.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6, 72.

Thereafter, the parties have fourteen days within which to file a response to the objections. Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to file timely objections to any factual determinations of the Magistrate Judge may be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See* Fed. R. Civ. P. 72.

Dated this 5th day of September, 2024.

_____
Honorable Eileen S. Willett
United States Magistrate Judge